## ALLEN v. COOLEY.

1. RECEIVER—SERVICE.—Notice of application for appointment of a receiver left with defendant's wife, at his residence, is good service.

2. JURISDICTION—WAIVER.—A defendant waives want of jurisdiction of his person by want of service by appearing and answering.

3. RECEIVER—OPEN AND REPLY.—In a motion for appointment of a receiver, the movant is entitled to open and reply.

4. EVIDENCE—PARTNERSHIP.—In an application by one partner for appointment of a receiver for partnership goods left in hands of other partner to pay debts with, which are being wasted by him, affidavits as to the presence of one partner at time of execution of a partnership note to a stranger to the record are properly excluded.

5. ANSWER—DEMURRER—DEFECT OF PARTIES—WAIVER.—Whether certain parties are necessary parties to an action, is an objection for "defect of parties," and is waived, if not taken by answer or demurrer.

6. RECEIVER—PARTIES—PARTNERSHIP.—To a proceeding by one partner for a receiver for partnership assets, to prevent other partner from wasting them, firm creditors are not necessary parties.

7. IBID.—PLEADING—COMPLAINT—PARTNERSHIP.—The allegations of this complaint are sufficient to warrant the appointment of a receiver for firm assets, on application of one partner against the other, in whose hands they were left for payment of firm debts, and who is wasting them.

8. FINDING OF FACT sustained, that the allegations of the complaint are supported by the proof.

9. EVIDENCE—PARTNERSHIP.—Whether one partner has transferred his individual property to his wife, is irrelevant in an action by him against his copartner for wasting firm assets received by him for payment of firm debts.

10. CIRCUIT JUDGE may correct in full decree inadvertent error made in short decree.

11. RECEIVER—SERVICE.—Defendant has no right to service of notice of application to Court by receiver simply for instructions in performing his duties.

12. JURISDICTION—THIS COURT has no jurisdiction of a cause until the return is filed.

13. STAY—APPEAL from an order directing delivery of personal property, &c., does not act as stay, unless provisions of sec. 350 of Code are complied with.

14. RECEIVER—JURISDICTION—SERVICE.—In order for Circuit Judge to acquire jurisdiction to make an order giving a receiver instructions as to his duties, it is not necessary to show that the notice of applica-

tion for the appointment of such receiver had been *personally* served on defendant.

Before ALDRICH, J., Greenville, March, 1898.   Affirmed.

Action by B. Berry Allen *v.* David K. Cooley and Thos. D. Cooley.   The Circuit decree fully states the facts, as follows:

After the argument of Mr. Cothran for the plaintiff, and Mr. Watkins for the defendant, T. D. Cooley, Mr. Graydon raised the objection for the first time that the notice of the application had not been personally served upon the defendant, D. K. Cooley, and that he could not be affected by the present proceeding.   The sheriff's return shows that diligent search was made for D. K. Cooley, and that he could not be found, and that the notice was served upon the wife of D. K. Cooley at his notorious place of residence in Lowndesville.   Under sec. 409, subdivision 2, of the Code, I hold that the service was sufficient.   I hold further that if the service were defective, the defendant, D. K. Cooley, has waived all objection thereto by the action of his attorneys, hereinbefore set forth.   The plaintiff and the defendant, D. K. Cooley, had been in the mercantile business as partners under the firm name of Allen & Cooley for many years, at Lowndesville, S. C.   On September 30th, 1897, they, by mutual consent, dissolved the partnership.   It was agreed at the dissolution that D. K. Cooley should pay B. Berry Allen the sum of $5,107.50 for his interest in the property of said firm, in satisfaction of which Allen accepted about 800 acres of land belonging to the firm, at a valuation of $3,500, and the two notes of D. K. Cooley, indorsed by T. D. Cooley, for $790 each, payable November 1st, 1898, and December 1st, 1898, the defendant, D. K. Cooley, making to the plaintiff a deed to his interest in the said partnership land.   The defendant, D. K. Cooley, executed at the same time an instrument in writing, assuming all the indebtedness of the old firm and releasing Allen from all obligation in the payment of the same.   The entire assets of the firm,

except the 800 acres, were turned over to D. K. Cooley, who continued business at the same place. On the 7th or 8th of October, 1897, Mrs. K. W. Allen presented to D. K. Cooley a note for $2,000, dated November 20th, 1891, purporting to be signed by Allen & Cooley, and demanded payment of D. K. Cooley. The latter said that he knew nothing about it, that it was not on his books, and that he did not intend to pay it. On the following day, D. K. Cooley attempted to transfer the stock of goods to his brother, the defendant, T. D. Cooley, at ninety cents on the dollar. He went to the insurance agent and had the policy of insurance changed to T. D. Cooley's name. A few days thereafter he returned to the insurance agent and told him that T. D. Cooley had been unable to procure the funds with which to pay for said stock of goods from a kinsman from whom he expected to get it, and declared that the trade was rescinded, and procured a retransfer of the insurance. On November 1st, 1897, Mrs. K. W. Allen commenced suit upon the $2,000 note. On November 8th, 1897, D. K. Cooley executed a bill of sale to T. D. Cooley of the said stock of goods, store fixtures, &c., for the expressed consideration of $3,580, $2,000 of which was to be paid to the Bank of Anderson upon a note of Allen & Cooley, and the remaining $1,580 was to be paid to B. Berry Allen upon the notes of D. K. Cooley, indorsed by T. D. Cooley. T. D. Cooley, on November 24th, 1897, paid the bank $2,000, took up the note of Allen & Cooley, with the collaterals, which he delivered to D. K. Cooley. On December 9th, 1897, D. K. Cooley executed to T. D. Cooley a mortgage on the stores he had received in the dissolution agreement, to secure an alleged debt of $714 for services as clerk and book-keeper to the firm of Allen & Cooley. The mortgage was recorded January 13th, 1898, four days before the Court met at Abbeville, during which the case of Mrs. Allen v. D. K. Cooley was to be tried. This suit resulted in a verdict for Mrs. Allen of $2,990, upon which judgment was duly entered, execution issued, and on February 9th, 1898, returned unsatisfied. On

February 12th, 1898, this action was commenced.   The defendants assail the plaintiff's right under the circumstances to the relief asked for, and insist that admitting all allegations of the complaint to be true, the plaintiff is not entitled to the appointment of a receiver.   To this proposition, I will address myself.

The plaintiff's case, as made by the complaint, is that the partnership is dissolved; that in the dissolution, D. K. Cooley assumed the debts of the old firm; that these debts amounted to $11,536.72; that D. K. Cooley received good assets amounting to $18,598.02, besides two stores and a dwelling house, with which to pay said debts; that the debts have not been paid, and claims to a large amount have been placed in attorney's hands for collection against the said Allen; that other suits have been instituted; that D. K. Cooley has entered into a fraudulent scheme with his brother, T. D. Cooley, by which all the visible assets of the late partnership have been transferred to the latter, and the real estate of D. K. Cooley encumbered with a mortgage which will exhaust all of it outside of his homestead exemption; that *nulla bona* returns have been made upon the executions issued against D. K. Cooley; that T. D. Cooley is without means; that the assets of the partnership are being wasted and misapplied, and that there is imminent danger of loss to the plaintiff in having to pay the debts which D. K. Cooley assumed upon the dissolution.   If these facts be true, I have no hesitation whatever in saying that the plaintiff is entitled to the relief he prays for.   This relief is worked out upon the plainest principles of equity and justice.   When one partner retires and is paid by the remaining partner for his interest in the business, the remaining partner, who assumes the debts of the old firm, becomes the principal debtor, so far as the creditors of the firm are concerned, and the retiring partner occupies the relation of surety.   No private arrangement can, of course, affect the rights of creditors, but the retiring partner is entitled to all the rights and consideration which the law accords to the

27—53

favored surety. "On dissolution of partnership, a partner who receives property of the firm and assumes the firm debts, is, as to the other partners, the principal debtor, and they are his sureties, and may sue to compel him to pay the debts without having paid them themselves." *Graham* v. *Thornton* (Miss.), 9 So., 292; *Colgrove* v. *Tallman*, 67 N. Y., 95; *Smith* v. *Sheldon*, 35 Mich., 42; *Rawson* v. *Taylor* (O.), 27 Am. R., 464. "When a partnership is dissolved, and one partner purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, he thereby becomes in equity the principal debtor as to such debts, and the other his surety, and a creditor having notice of such agreement is bound by such relationship." *Colgrove* v. *Tallman*, 67 N. Y., 95 (23 Am. R.) "If a partnership is dissolved, and one of its members agrees to discharge all of its liabilities, a note subsequently executed by him in the firm name, in consideration of a pre-existing partnership indebtedness, extending the time for its payment, cannot be enforced against his copartners, if the payee knew of the existence of the agreement, because after such agreement the position of the other partners was that of surety to the partner who had agreed to pay the debt, and the creditor should not be allowed to make a new contract extending the time of payment without their consent. The new note is, therefore, binding only upon the partner who executed it." *Leithauser* v. *Baumeister* (Minn.), 28 Am. St. Rep., 336. The relation of principal and surety being thus unquestionably established, a court would not deny relief to a surety who makes it appear that his principal is insolvent, and is wasting and fraudulently transferring his property, which is stamped with the trust of being applicable to the debt. A court of equity, upon the application of a surety who apprehends injury from further delay, may compel the principal debtor to discharge his debt past due, although the surety has not been sued and has not paid the debt." *Norton* v. *Reid*, 11 S. C., 593. *A fortiori*, will the court of equity afford relief when the surety

has been sued to judgment and the trust property is being fraudently disposed of? The Court, in *Norton* v. *Reid*, *supra*, quotes with approval the remarks of Lord Keeper North, in *Runelaugh* v. *Hayes*, 1 Vern., 189, as follows: "Although the surety is not troubled or molested for the debt, yet, at any time after the money becomes payable on the original bond, this Court will decree the principal to discharge the debt; it being unreasonable that a man should always have such a cloud hang over him." It would be equally unreasonable to hold that a surety should stand by and see the property, which is in all good conscience and fair dealing applicable to these debts, dissipated by the fraudulent conduct of the remaining partner. I am not without express authority sustaining this position, which strongly commends itself to my judgment. "Where, upon the dissolution of a partnership, one partner is authorized by agreement between the partners to close up the firm business, and its property and assets are turned over to him, upon his agreeing to hold the other parties harmless, notwithstanding his right under the contract to exclusive possession, if the bill shows that he is wasting or misapplying the funds, or that there is danger to the remaining partners from his insolvency or fraudulent conduct, a sufficient case is stated to justify a receiver." High Rec., p. 506. "And where, upon a dissolution, a retiring partner transfers his interest to the remaining partners on condition that they assume all the firm indebtedness, and agree to hold him harmless, such agreement does not release him as to the firm's creditors, but he assumes a position of surety as to the remaining partners. Where they act in violation of the terms of the agreement, as by sending the firm's money beyond the State, or are otherwise wasting and misapplying the funds, or where the retiring partner is sued for the firm's debts, or there is danger of such suits by reason of the insolvency of the remaining partners, the Court may appoint a receiver of the firm's assets, upon the application of the retiring partners." Beach Rec., sec. 580; *West* v. *Chasten*,

12 Fla., 315; *Drury* v. *Roberts*, 2 Md. Ch., 157. "Where the security of an administrator of a deceased partner (who purchased the firm assets and bound himself to pay the firm debts, and who has died leaving firm debts unpaid and firm assets,) is insufficient, the Court may appoint a receiver to receive from said administrator the partnership assets in his hands, and to proceed to collect the same." *Shackelford* v. *Shackelford*, Va., 32 Grat., 481. "Although an injunction will not be granted merely on the ground of the dissolution of the partnership, it will be granted where there is a violation of duty in the partner, or breach of contract." *Ellis* v. *Commander*, 1 Strob. Eq., 192. "And a receiver will also be granted * * * if there had been abuse of the assets and there is danger of further misapplication, and he is insolvent." 2 Bates Part., sec. 1001. "There must be some palpable breach of contract or of duty, or some misconduct amounting to fraud, or such as will endanger the property and the rights of the partner who has withdrawn, in order to justify this Court's interference by injunction and receiver." *Walker* v. *Trott*, 4 Edw. Ch., 39; Collyer Part., 196, 197. "Where continuing partners have agreed to apply the assets to the debts of the old firm, and one of the partners in the new firm misapplies them, a receiver will be appointed." *Goddington* v. *Tappan*, 26 N. J. Eq., 141. "When upon the dissolution of a partnership its members form new firms, under agreement to apply the partnership assets in their hands to the payment of debts of the old partnership, and one of the firm converts to their own use, or misappropriates such assets, or their conduct induces the conclusion that they have been, or are likely to be, untrue to the trust so reposed in them, the Court will take the partnership assets out of their hands and place them in the hands of a receiver." (*Idem.*) The defendant's counsel insisted at the hearing that the creditors of Allen & Cooley should have been made parties to the suit, and that the action would not lie for that reason. It is a sufficient answer to this position to say that the objection is that of defect of

parties, and should have been made by demurrer or answer, which was not done.    Another objection was, that it was not alleged in the complaint that D. K. Cooley is insolvent. The complaint alleges that *nulla bona* returns have been made upon executions issued against him, and I have always supposed that that was the highest legal evidence of insolvency.    Besides, I do not think that such allegation is essential.    When it is alleged that suits have been commenced and judgments obtained against the retiring partner, and the assets have been fraudulently transferred, a sufficient case of *quia timet* is made out.

I will now consider the testimony in this case, and determine whether, in my opinion, the truth of the allegations of the complaint is established.    The dissolution occurred on the 30th of September, 1897.    The business was turned over to D. K. Cooley, who continued to run it.    It does not appear but what his intention was to continue it indefinitely. No satisfactory reason is apparent why he should so suddenly change his plans, unless it is found in the facts about to be referred to.    On October 8th, 1897, Mrs. K. W. Allen, wife of the plaintiff herein, presented to D. K. Cooley a note for $2,000, signed by Allen and Cooley, and dated November 20th, 1891.    Cooley stated that he knew nothing about it, and did not intend to pay it; that it was not on his books. The very next day D. K. Cooley attempted to transfer the stock of goods to Thomas D. Cooley.    In his answer he admits this, but offers no explanation of his sudden change of plans.    He admits, also, that he went to the insurance agent and procured the transfer of the policy of insurance to T. D. Cooley, and that a few days thereafter he returned to the insurance agent, and telling him that his brother having failed to procure the funds from a kinsman with which to pay for the stock of goods, the trade was off, procured a retransfer of the policy.    Shortly thereafter, on November 1st, the summons and complaint in the case of K. W. Allen *v.* D. K. Cooley, on the note referred to, were served upon the said D. K. Cooley.    It seems to have started again the

train of thought and action interrupted by the failure of T. D. Cooley on October 8th to procure the funds from his kinsman, for on November 8th, D. K. Cooley executed an alleged bill of sale to T. D. Cooley of all the stock of goods, iron safe and store fixtures, for the consideration of $3,580; $2,000 of which to be paid to the Bank of Anderson on December 3d, upon a note of Allen & Cooley, and the remainder, $1,580, to B. Berry Allen upon the two notes executed by D. K. Cooley for Allen's interest in the business, indorsed by said T. D. Cooley. T. D. Cooley claims to have paid to the bank this $2,000 out of his own funds, realized from the drug business of Cooley & Speer, and from his peddling clocks and bibles during the spring and summer of 1897. It is incredible to me that he should have accumulated such a surplus in so short a time from such sources. The complaint alleges that he was a young man, living on a salary such as is usually paid to a clerk or book-keeper in a country store, little if any more than was necessary for his support; that he supported his family from said salary; that his home is unpaid for, and that he has been paying for it by monthly instalments to a building and loan association. These statements are not denied by either defendant in his answer, and I take them to be true. It is also admitted on all sides that few days after the attempted transfer of the property from D. K. Cooley to Thomas D. Cooley, the trade between them was declared off on account of T. D. Cooley's inability to raise the necessary funds. This was about the 8th of October; yet, on the 8th of November, T. D. Cooley found himself prepared to consummate a trade which he failed to do thirty days previous, with funds received from the two enterprises referred to. In other words, on October 8th he failed to get money from a kinsman as he expected, and between that time and November 8th he realized enough to consummate the trade from a source to which he does not seem to have looked at all on October 8th. They attempted to explain this by saying that the first trade was that T. D. Cooley should

take the entire business of Allen & Cooley and pay all the debts; that the debts amounted to $12,000, and that he was unable to raise that amount. This, I think, is an afterthought, for in D. K. Cooley's answer, paragraph VII., he states with particularity that the trade was rescinded, "because of the inability of his codefendant to raise the money to pay this defendant for the said stock of goods." None of the money would have gone to D. K. Cooley if the afterthought had been the true relation of what the agreement was—it would have gone to the creditors. My opinion is that D. K. Cooley's first impression, when the note was presented to him, was to transfer the entire business to his brother to defeat Mrs. Allen. For some reason he concluded that that was not the best thing to do, and rescinded the trade. That when the suit was commenced on the Allen note, he saw that the "Philistines were upon him," and his brain evolved the scheme now relied upon. The affidavits satisfy my mind that between the 8th and 24th of November, D. K. Cooley collected considerable money from the business of Allen & Cooley, turned it over to T. D. Cooley, who deposited it to the credit of Cooley & Speer, and drew against on November 24th to pay the $2,000 bank note. The plaintiff presents the affidavit of B. F. Mauldin, cashier of the Bank of Anderson, to which is attached the following checks of Allen & Tennent, which were paid to D. K. Cooley for cotton: October 8th, 1897, $200; the check is indorsed by D. K. Cooley, and by T. D. Cooley, to whose credit it appears to have been deposited. November 11th, 1897, $20.50. This is indorsed by D. K. Cooley, and was deposited in the Bank of Anderson to the credit of Cooley & Speer. November 16th, 1897, $198.82. This is indorsed by D. K. Cooley, and was deposited in the Bank of Anderson to the credit of Cooley & Speer. November 22d, 1897, $585.38. This was indorsed by D. K. Cooley, and was deposited in the Bank of Anderson to the credit of Cooley & Speer. These aggregate $1,004.70 of D. K. Cooley's money directly traceable to T. D. Cooley's posses-

sion, and just about the time when T. D. Cooley was admittedly impecunious on October 8th, and needed funds to take up the bank note of $2,000. It also appears that on November 18th, D. K. Cooley sold a lot of cotton to Allen & Tennent, and insisted on having the money and not a check. The amount was $869. This fact, taken in connection with T. D. Cooley's statement that he paid off the bank note of $2,000 with a check of Cooley & Speer, $1,150, and cash $850, constrains me to the conclusion that every dollar paid by T. D. Cooley on the bank note was furnished by D. K. Cooley covertly, to falsely present the appearance of *bona fides* to the transfer from him to T. D. Cooley. After December 1st, all checks paid to D. K. Cooley by Allen & Tennent appear to have been deposited to his credit, and not to the credit of Cooley & Speer. It appears, also, that T. D. Cooley had a claim of several years standing, amounting to $1,750, against D. K. Cooley for money loaned while the latter was a fugitive from justice. That he also had a claim for $714 for services against the firm of Allen & Cooley. These two claims, amounting to $2,464, do not appear to have been considered at all in the trade between the two brothers. It seems unreasonable in the extreme that T. D. Cooley should have paid out $2,000 in cash to D. K. Cooley, or for his benefit, at a time when D. K. Cooley was owing him $1,750, with six years interest, and $714 besides. It is compatible with the view I have taken, that T. D. Cooley was paying out D. K. Cooley's money when he took up the bank note. This note was not due until December 3d. Why T. D. Cooley anticipated the payment on November 24th, is not explained. At the time of dissolution, D. K. Cooley presented a statement showing the assets and liabilities of the partnership. It does not include the real estate belonging to the firm, which consisted of a tract of 800 acres of land, two stores and a dwelling house in the town of Lowndesville. The tract of land was allotted to Allen and the other real estate to Cooley. The valuation placed upon the tract of land, as stated in D. K.

Cooley's answer, was $3,500. The other real estate is esti-
mated in the complaint at $1,700, and there is no further
evidence as to its value. Estimating the 800 acres at
$3,500 and the other real estate at $1,700, the

| | | | |
|---|---|---|---|
| Total assets of the firm were...... | | | $44,071 84 |
| Deduct liabilities.....................$11,536 72 | | | |
| and bad debts... | 8,737 10— | 20,273 82 | |
| Net assets............................. | | 23,798 02 | |
| Deduct real estate to Allen......... | 3,500 00 | | |
| and Cooley's notes... | 1,580 00— | 5,080 00 | |
| Leaving for Cooley.................. | | $18,718 02 | |
| Charged with the debts............. | | 11,536 72 | |
| Net for Cooley....................... | | 7,181 30 | |

The plaintiff has directly traced to the possession of D.
K. Cooley *in only four items*, the following receipts from the
business of Allen & Cooley:

| | |
|---|---|
| Proceeds of cotton sold Harper and Latimer..... | $ 1,722 95 |
| "         "     "   E. R. Horton............. | 4,367 06 |
| "         "     "   Allen & Tennent........ | 2,603 10 |
| Proceeds of cotton seed............................ | 1,000 00 |
| | $ 9,693 20 |
| To this may be added amount received from T. D. Cooley for certain mortgages.............. | 315 00 |
| | $10,008 20 |

These five items above aggregate a little over $10,000
received by D. K. Cooley, and according to his own state-
ment he has paid out a little over $7,000 on the debts.
There should be in his hands, then, almost enough to pay
the outstanding debts of Allen & Cooley, which amount to
$3,500, exclusive of the K. W. Allen judgment. In Febru-
ary, after the Allen judgment was obtained, D. K. Cooley
stated to Mr. Heath, a salesman for Franks & Co., creditors

of Allen & Cooley, that he would not pay any of the claims against Allen & Cooley until he got rid of the Allen judgment. I am satisfied that the desire on the part of D. K. Cooley to evade the payment of this note, was the moving cause of all his schemes, and in his effort to do so he cared not what became of his obligations to pay the other creditors. The defendants insist that the plaintiff does not come into Court with clean hands, because he has conveyed the real estate acquired by him to his wife. It does not appear that he has no other real estate, and whether or not that conveyance was in fraud of the creditors of Allen & Cooley, it will be time enough to inquire when those creditors whom D. K. Cooley contracted to provide for, complain. The affidavits submitted by the defendant attacking the validity of the K. W. Allen note, upon which judgment has been obtained, are not relevant to this issue, and are stricken out. The order appointing a receiver in this case, signed March 11, 1898, was prepared very hurriedly on the eve of my departure from Greenville for Aiken, and there is a manifest error in it, which I desire to correct. The value of the assets of Allen & Cooley is fixed in that order at $2,500, and the bond at $5,000. From the foregoing statement it is apparent that this is incorrect. The net assets which went to D. K. Cooley

| | | |
|---|---|---|
| By the agreement were................. | | $18,718 02 |
| It appears that he has paid out...... | $7,518 90 | |
| And that T. D. Cooley has paid bank | 2,000 00 | 9,518 90 |
| | | |
| D. K. Cooley should have assets worth........... | | $9,199 12 |
| But deduct therefrom for losses................... | | 4,199 12 |
| | | |
| Leaving him with assets certainly worth......... | | $5,000 00 |

The bond required of him should, therefore, have been fixed at $10,000. The amount fixed in the order as the value of the assets of Allen & Cooley was intended to refer only to the assets in the possession of T. D. Cooley, claiming an interest therein under any contract, lease or conveyance

thereof from the alleged owner, D. K. Cooley. It is fixed at $2,500, and the latter having given bond to account for it at that valuation, is, of course, not affected by the correction.

I find as conclusions of fact: 1. That the partnership of Allen & Cooley has been dissolved. 2. That in the dissolution, D. K. Cooley assumed the payment of all the debts of the old firm, and released B. Berry Allen from all obligation thereupon. 3. That the debts amounted to $11,536.72, and that D. K. Cooley received assets of the value of $18,718.02 with which to pay them. 4. That there are judgments and other debts outstanding and unpaid against the said firm of at least $3,500, the exact figures not being available, in addition to the K. W. Allen judgment. 5. That the defendant, D. K. Cooley, having determined to resist and evade the payment of the K. W. Allen note, fraudulently conspired with the defendant, T. D. Cooley, who was cognizant of his purpose, to transfer all the visible assets of the firm of Allen & Cooley, received by him in the agreement of dissolution, to the said T. D. Cooley, with intent to hinder, delay and defraud the said K. W. Allen and the other creditors of Allen & Cooley. 6. That *nulla bona* returns have been made on the executions lodged against the said defendant, D. K. Cooley. 7. That the assets of the said partnership received by D. K. Cooley are being wasted and misapplied. 8. That the plaintiff is in imminent danger of being required to pay the debts of Allen & Cooley, assumed by D. K. Cooley in the said agreement of dissolution.

I find as conclusions of law: 1. That the plaintiff is entitled to the relief prayed for in the complaint. An order has heretofore been passed appointing a receiver of the assets of said firm. Let the original affidavits read upon this hearing be forthwith filed in the office of the clerk of the court of Abbeville County. It is further ordered, that the value of the assets of Allen & Cooley, transferred to and now in the possession of D. K. Cooley, be and hereby is fixed and adjudged at the sum of $5,000, and the said D. K.

Cooley, by giving bond as provided by law in the penalty of $10,000, may apply for the discharge of the receiver herein as against himself.

From this decree, the defendants, David K. Cooley and Thomas D. Cooley, appeal, submitting that his Honor erred as follows:

I. In not holding that the complaint is fatally defective, and is insufficient to base an application for the appointment of a receiver upon, for the following reasons: 1. That it does not allege that the plaintiff has any debt against D. K. Cooley that is due, but, on the contrary, alleges that the debt is not due, and will not be due until next November, and does not allege that the plaintiff is a creditor of the firm of Allen & Cooley. 2. That it does not allege that said defendant, Thomas D. Cooley, is indebted to the plaintiff or to the firm of Allen & Cooley. 3. That it does not allege that, at the time of the sale of the said stock of goods, or at the time of the giving of the said mortgage, T. D. Cooley was a creditor of the said firm of Allen & Cooley, or either of them, and, therefore, states no cause of action under the assignment act of this State. 4. That it does not state that any creditor has attempted, or is about to attempt, to make any money out of the said plaintiff, or that there is any immediate danger of his having any of the debts to pay. 5. That the complaint shows on its face that the partnership heretofore existing between the plaintiff and D. K. Cooley has been dissolved by mutual consent, an account stated and agreed to, and that the plaintiff has received his full share of the partnership assets, and has no longer any interest in said business. 6. That the complaint fails to state that plaintiff has any right to any of the property mentioned in the complaint, or that either of the defendants is selling or making way with any of said property, so as to injure the plaintiff during the litigation. 7. That it does not allege that either of the defendants is insolvent, but, on the contrary, shows that D. K. Cooley

is abundantly able to pay any judgment that may be rendered against him.    8. That the complaint does not allege that the price paid by said Thomas D. Cooley for said stock of goods is not a full and fair price for the same.

II. In holding that the objection of the defendants, that the creditors of Allen & Cooley should have been made parties to the action, should have been taken by demurrer or answer, which was not done, he having no right at chambers to pass upon a demurrer, and having himself so held in this case.

III. In holding that it is not necessary to allege in the complaint that D. K. Cooley is insolvent.

IV. In speaking of the debt secured by mortgage on the stores as "an alleged debt of $714 for services as clerk and book-keeper of the firm of Allen & Cooley," there being no evidence whatsoever that it was "an alleged debt," and there being clear and positive proof that it is a *bona fide* debt of Allen & Cooley to T. D. Cooley for services rendered to said firm.

V. In stating: "It does not appear but what his intention was to continue it indefinitely," said statement being irrelevant to the issues involved in this case.

VI. In making this statement: "On November 8th, D. K. Cooley executed an alleged bill of sale to T. D. Cooley," etc., there being no evidence whatsoever offered by the plaintiff, except the unsupported statement of his complaint, that the bill of sale was not *bona fide*, and the overwhelming and uncontradicted proof offered by the defendants being that Thomas D. Cooley paid out of his own funds to the Bank of Anderson the sum of $2,000 due there on a note of Allen & Cooley, and is able and ready to pay the two notes to B. Berry Allen at their maturity.

VII. In finding that the statements of the complaint are true as to the said Thomas D. Cooley having worked for a salary little more than sufficient for the support of his family, etc.; the proof being that the said Thomas D. Cooley was not married until the fall of 1895, and the said finding being

irrelevant to the issue involved herein, in the absence of an allegation that the said defendant had no other sources of income, and in the face of uncontradicted evidence that he has been for some years engaged in a prosperous mercantile and peddling business, and has had for years money lent out at interest.

VIII. In finding that it was an afterthought in Thomas D. Cooley to say that, according to the first trade, he was to take the entire business of Allen & Cooley, when the complaint of the plaintiff states in the seventh paragraph thereof that the said D. K. Cooley "bargained his stock and business to his brother," and that allegation is not denied by either answer.

IX. In finding "that between the 8th and 24th of November, D. K. Cooley collected considerable money from the business of Allen & Cooley, turned it over to T. D. Cooley, who deposited it to the credit of Cooley & Speer, and drew against it on November 24th to pay the $2,000 bank note," there being no evidence offered by the plaintiff to support such finding, and evidence offered by the defendants showing that the four checks mentioned in B. F. Mauldin's affidavit, submitted by plaintiff, were paid for with the money of Cooley & Speer, and the evidence being, as stated a little further on in the decree, that the $2,000 note was paid with a check of Cooley & Speer for $1,150 and $850 in cash.

X. In finding that "these" (four checks) "aggregate $1,004.70 of D. K. Cooley's money directly traceable to T. D. Cooley's possession," there being no evidence offered by the plaintiff that any of them, except the check for $200, fully explained by T. D. Cooley, went into T. D. Cooley's possession; and the evidence offered by the defendants being that the other three checks were bought by the firm of Cooley & Speer with their own money and in the usual course of business, and according to their usual custom, which was for the benefit of both the seller and the buyer.

XI. In finding "that every dollar paid by T. D. Cooley

on the bank note was furnished by D. K. Cooley covertly," there being no evidence offered by the plaintiff to sustain that finding, and the evidence offered by the defendants showing that the money with which the bank note was paid belonged to T. D. Cooley.

XII. In finding that it was unreasonable for T. D. Cooley to have paid out $2,000 for D. K. Cooley at a time when D. K. Cooley owed T. D. Cooley $2,464, with six years interest, on $1,750.

XIII. In making the following finding of fact: "That the defendant, D. K. Cooley, having determined to resist and evade the payment of the K. W. Allen note, fraudulently conspired with the defendant, T. D. Cooley, who was cognizant of his purpose, to transfer all the visible assets of the firm of Allen & Cooley, received by him in the agreement of dissolution, to the said T. D. Cooley, with intent to hinder, delay and defraud the said K. W. Allen and the other creditors of Allen & Cooley."

XIV. In finding as a fact "that the assets of the said partnership received by D. K. Cooley are being wasted and misapplied."

XV. In finding "that the plaintiff is in imminent danger of being required to pay the debts of Allen & Cooley in the said agreement of dissolution."

XVI. In finding as a conclusion of law "that the plaintiff is entitled to the relief demanded in the complaint."

XVII. In not finding and holding that when answers are filed positively and explicitly, denying all the material allegations of the complaint, the plaintiff is not entitled to the appointment of a receiver after the answers are filed, unless he offers evidence to sustain the allegations of the complaint, and disprove the statements of the answers.

XVIII. In not holding that the plaintff is not entitled to the appointment of a receiver in this case, both the defendants having filed answers before the hearing, denying all the material allegations of the complaint, the plaintiff not having offered any evidence to sustain said allegations,

and the defendants having gone further than they are required by law to do and offered positive evidence disproving all said allegations.

XIX. Because the said order and decree are contrary to law, and without evidence to support them.

XX. Because his Honor should have held that the plaintiff had no standing in a court of equity, for the reason that he does not come with clean hands, and for the further reason that he does not offer to surrender the property of the firm received by him in the agreement for dissolution, and does not offer to do anything himself for the protection of the creditors.

XXI. In allowing plaintiffs to open and reply.

The defendant, D. K. Cooley, further excepts to the said decree, and appeals, submitting that his Honor erred in the following additional particulars:

I. In holding that the service of the notice of application for the appointment of a receiver and the order of injunction on the wife of this defendant, was sufficient to bind this defendant, and give his Honor jurisdiction to pass the said order.

II. In not holding that he had no jurisdiction of this defendant, by reason of the fact that the said notice and order were not served upon him.

III. In holding "that if the service were defective, the defendant, D. K. Cooley, has waived all objection thereto by the action of his attorneys hereinbefore set forth," his attorney having made the objection at the beginning of his argument, and the objection to the jurisdiction being one that is never waived and can be taken at any stage of the proceeding.

IV. In finding that "the plaintiff has directly traced to the possession of D. K. Cooley *in only four items*, $9,692.20," the evidence being that this defendant paid out in cash for cotton bought by him $3,737.44, and that his cotton seed

purchases amounted to about $793.14, and he paid in cash therefor about $591.72.

V. In finding that this defendant has paid out a little over $7,000 on the debts of Allen & Cooley, that evidence being that this defendant has collected of the assets of said firm the sum of $7,708.71, and paid out $7,518.90, besides the $2,000 paid by T. D. Cooley to the Bank of Anderson, which statement of payments is made further on by his Honor in his said decree.

VI. In finding that this defendant sold to Allen & Tennent on November 18th, a lot of cotton for $869, and demanded the cash for it, there being no evidence to sustain such finding except the unsupported statement of B. Berry Allen not made under oath.

VII. In finding that the debts of Allen & Cooley now unpaid amount to at least $3,500, he having found in a preceding part of his decree that the debts of the said firm amounted to only $11,536.72, and that this defendant and T. D. Cooley had paid thereon $9,518.90, which would leave a balance due of $2,017.82.

VIII. In changing the valuation of the assets fixed by his order appointing a receiver at $2,500 to $5,000, and in changing the bond from $5,000 to $10,000, without notice to this defendant, the said order having been already filed with the clerk of the court, and having fixed the rights of the parties.

IX. In not finding and holding that this defendant has acted in perfect good faith, and has done all in his power to collect the assets and pay the debts of Allen & Cooley.

X. In not finding that there is no evidence that this defendant has wasted or misapplied the assets of said firm, or done anything else to the prejudice of the creditors of said firm.

XI. In striking out the affidavits submitted by this defendant, to show that at the time the plaintiff and his wife swore this defendant was at Lowndesville, November 20th, 1891, and directed the plaintiff to sign the alleged note to

the said K. W. Allen, this defendant was in Graves County, Kentucky; the said affidavits being responsive to the issues raised by the pleadings, and this being an action between other parties, and not between the said K. W. Allen and this defendant, this defendant has the right to show, as against the plaintiff, or any one, except the said K. W. Allen, that the said judgment is not a valid debt of Allen & Cooley or of this defendant, and that it was obtained by the fraud of the said plaintiff.

*Messrs. Graydon & Graydon,* for appellants, cite: *Court did not acquire jurisdiction of D. K. Cooley to appoint receiver:* 22 Stat., 510; Code, 409; 12 S. C., 561; Code, 169. *Complaint is insufficient to base an application for receiver upon:* 1 Woods, 266; 27 S. C., 408. *Creditors of Allen & Cooley should have been made parties:* 11 S. C., 593.

*Messrs. Bonham & Watkins,* for T. D. Cooley, appellant, filed no argument.

*Messrs. Wm. H. Parker* and *Wells, Ansel & Cothran,* contra. The latter, cite: *Complaint alleges insolvency of Cooley:* 33 S. C., 451. *Service of notice of motion for application for receiver upon D. K. Cooley by leaving at his residence, is sufficient:* Code, 408, 409, 418; 22 Stat., 510; 44 S. C., 177. *Defect in service, if any, waived:* 46 S. C., 9. *Clerical error in decree may be corrected:* 21 S. C., 17. *Failure to serve D. K. Cooley with copy order appointing receiver does not affect title to property transferred by order appointing receiver:* 4 Sand. Ch., 270; 19 N. Y., 374; 5 N. Y., 344. *Appeal without giving bond, &c., does not act as supersedeas:* 33 S. C., 497. *Defendant chargeable with such notice as he had:* 25 S. E. R., 833.

Oct. 25, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiff and the defendant, D. K. Cooley, were copartners in trade, under the name of Allen & Cooley, carrying on a mercantile business for a series of years prior to the 30th of September, 1897, and on that day the partnership was dissolved by mutual consent. For the purpose of the dissolution a

statement of the assets and liabilities of the firm was sub-
mitted by D. K. Cooley, who seems to have had the active
management of the mercantile business—the plaintiff being
a farmer, and taking but little part in the management of
the business.    This statement seems to have been prepared
by the defendant, T. D. Cooley, who is the brother of his
codefendant, and had been for several years a clerk in the
store, and since June, 1891, the book-keeper of the concern.
In this statement the total assets of the partnership, not
including certain real estate owned by it, was set down at
$38,871.84, and the total liabilities at $11,536.72, which,
after deducting the amount of certain choses in action,
said to be not good—$8,737.10—showed a balance of good
personal assets to the amount of $18,598.02.    By the
terms of the dissolution the plaintiff agreed to receive, and
did receive, in full of his interest a tract of land estimated
at $3,500, and two notes of D. K. Cooley, indorsed by T.
D. Cooley, for $790 each—one payable on 1st of Novem-
ber, 1898, and the other payable on 1st of December, 1898;
and all the other assets of the firm, real as well as personal,
were turned over to the defendant, D. K. Cooley, he agree-
ing to pay all the debts of the firm, and releasing plaintiff
from any liability therefor.    A few days after this transac-
tion was consummated, Mrs. K. W. Allen presented a note,
bearing date 20th of November, 1891, purporting to be
signed by Allen & Cooley, for $2,000, to the defendant, D.
K. Cooley, and demanded payment thereof.    He refused
to pay it, saying he knew nothing about any such debt of
Allen & Cooley.    Very soon thereafter, probably the next
day, D. K. Cooley made an arrangement to sell his stock
of goods to his brother, T. D. Cooley, and went to the in-
surance agent and had the policy issued on the goods
changed to the name of T. D. Cooley.    But a few days
afterwards, D. K. Cooley returned to the insurance agent
and procured a retransfer of the insurance policy to him-
self—stating to the agent "that the trade with T. D. Cooley
had fallen through, as T. D. Cooley had failed to get some

money from a kinsman of his whom he expected to let him
have it." All this occurred about the 8th of October, 1897,
eight days after D. K. Cooley had bought out the interest
of the plaintiff in the assets of Allen & Cooley, and assumed
the payment of the debts of that firm. On the 1st of Novem-
ber, 1897, Mrs. K. W. Allen commenced an action against
D. K. Cooley on the $2,000 note above referred to, and re-
covered judgment thereon, probably at the next term of
the Court, as the execution issued on such judgment was
returned unsatisfied, on the 9th of February, 1898. Before
this judgment was recovered, but after the action was com-
menced, to wit: on the 8th of November, 1897, D. K. Cooley
executed a bill of sale to T. D. Cooley of the said stock
of goods and store fixtures for the consideration expressed
therein of $3,580, to be paid as follows: $2,000 to the Bank
of Anderson on a note of Allen & Cooley, due 3d of Decem-
ber, 1897, and $1,580 to the plaintiff on the two notes given
by D. K. Cooley to plaintiff, and indorsed by T. D. Cooley,
on the dissolution of the partnership; and on the 9th of De-
cember, 1897, D. K. Cooley executed a mortgage to T. D.
Cooley on the storehouses which he received upon the dis-
solution of the partnership of Allen & Cooley, to secure
the sum of $714.03 claimed to be due T. D. Cooley by Al-
len & Cooley for his services as clerk and book-keeper; but
this sum, as well as a claim for $1,750 by T. D. Cooley
against D. K. Cooley for money alleged to have been ad-
vanced by T. D. Cooley to D. K. Cooley in 1891, when he
was a fugitive from justice, do not appear to have been
considered in the trade between the two brothers for the
stock of goods.

Upon the foregoing facts, which cannot well be disputed,
the plaintiff commenced this action on the 10th of Febru-
ary, 1898, amongst other things, for the purpose of having
a receiver appointed to take charge of all the assets of the
late firm of Allen & Cooley, and administer the same under
the direction of the Court. In the complaint, many other
allegations are made, the most of which are disputed, going

to show that D. K. Cooley was wasting the assets of the late firm of Allen & Cooley, left in his hands for the payment of the debts of that firm, whereby the plaintiff is in danger of being subjected to personal liability to the creditors of said firm; wherefore, amongst other things, the appointment of a receiver is prayed for. But the allegations of the complaint are so clearly and succinctly stated in the decree of the Circuit Judge, which will be incorporated by the Reporter in his report of the case, that no more detailed statement is needed here.

On the 3d of March, 1898, the plaintiff applied for and obtained from his Honor, Judge Aldrich, an order restraining and enjoining the defendants from delivering to any person whomsoever the property and assets belonging to the late firm of Allen & Cooley, pending the hearing of an application for the appointment of a receiver of said property, motion to be heard by him at Pickens, S. C., on the 10th of March, 1898; and on the same day the plaintiff issued a notice, addressed to the defendants: "That upon the verified complaint in the above stated case, and upon the accompanying affidavits," an application would be made to Judge Aldrich, at Pickens C. H., on the 10th of March, 1898, at 10 o'clock a. m., for an order appointing a receiver as aforesaid. It is stated in the "Case" that "A certified copy of the above order of injuction and copies of the above notice of motion and affidavits were duly and personally served on the defendant, Thomas D. Cooley, on the 4th day of March, 1898, and on the same day the sheriff left copies of the above papers with the wife of D. K. Cooley, at his residence at Lowndesville, he being absent." By consent of counsel the hearing of the motion for the appointment of a receiver was transferred to Greenville, and it was there heard on the 10th of March, 1898, at 8 o'clock P. M. At the hearing the defendants, for cause why the motion should not be granted, submitted the pleadings, including the answer of D. K. Cooley to the complaint, which had been served on the 25th of February, 1898, together with numerous af-

fidavits set forth in the "Case." The plaintiff was represented at the hearing by Messrs. Wells, Ansel & Cothran, and the defendants, D. K. Cooley and T. D. Cooley, by Messrs. Graydon & Graydon; Messrs. Bonham & Watkins being also of counsel for T. D. Cooley. The complaint and affidavits submitted in support of the motion were read by plaintiff's attorneys, and Mr. Graydon read the answers of D. K. Cooley and T. D. Cooley, together with numerous affidavits submitted in their behalf, in opposition to the motion, all of which are set out in the "Case." The defendants then claimed the right to open and reply in argument, but the Circuit Judge held that plaintiff had the right to open and reply. After the argument of Mr. Cothran for plaintiff, and Mr. Watkins for defendant, T. D. Cooley, Mr. Graydon raised the objection, for the first time, that defendant, D. K. Cooley, had never been served, personally, either with a copy of the order of injunction or with the notice of the motion for the appointment of a receiver, and, therefore, the Circuit Judge could not take jurisdiction of the matter, so far as said D. K. Cooley was concerned. The objection was overruled and the application was considered on the merits. After argument and due consideration, an order was granted appointing W. C. Tennent receiver, fixing the value of the property at $2,500, and the amount of the bond which defendants might give at $5,000—saying that his reasons would be stated in a decree thereafter to be filed. This order was granted on the 11th of March, 1898, and was served on T. D. Cooley on the 14th of March, 1898, but has not been served on D. K. Cooley, nor has any notice of the appointment of a receiver been published. Subsequently, to wit: on the 24th of March, 1898, Judge Aldrich made a decree, setting forth, at length, the reasons for granting the above mentioned order of the 11th of March, 1898, and taking occasion to correct an inadvertent error in that order as to the value of the property, and in the amount of the bond which defendants might give, explaining how such error occurred.

On the 23d of March, 1898, the receiver presented his verified petition to Judge Aldrich, setting forth that said D. K. Cooley is in possession of a large quantity of choses in action belonging to the late firm of Allen & Cooley; "that ever since the proceedings were instituted to have a receiver appointed, the said D. K. Cooley has absented and secreted himself to avoid service of process, and it has been impossible to effect personal service upon him; and that the wife of said Cooley is alone with her family at the residence of said Cooley, at Lowndesville; that the receiver has made demand upon her for the said premises, but the same has been refused." Wherefore, he asks the instructions of the Court as to how to proceed in the present situation of affairs. Thereupon the Circuit Judge granted an order, without notice either to D. K. Cooley or his attorney, directing the receiver to procure from the records of the office of register of mesne conveyances a list of all notes secured by mortgages of real and personal property, executed to the firm of Allen & Cooley, notify the makers of such notes and mortgages that the same are payable to him and not to D. K. Cooley, and that he proceed at once to collect the same. This order bears date 24th of March, 1898. On the 31st of March, 1898, the attorneys of D. K. Cooley gave notice to the attorneys for the plaintiff of a motion to vacate said last mentioned order upon the several grounds stated in the motion, which will hereinafter appear, but Judge Aldrich refused to vacate said order.

The defendants gave due notice of appeal from the foregoing orders and decree in reference to the appointment of a receiver, including the last mentioned order instructing the receiver how to proceed with reference to the collection of choses in action belonging to the late firm of Allen & Cooley, upon the several exceptions set out in the record, which will be incorporated in the report of this case.

We do not propose to consider these exceptions *seriatim*, but rather to consider the several questions which we understand them to present. The first question which we pro-

pose to consider is, whether the Circuit Judge had acquired jurisdiction of the person of the defendant, D. K. Cooley, at the time he heard and determined the application for the appointment of a receiver? While the act of 1897—22 Stat., 510—does require notice to be given to the party whose property is sought to be put in the hands of a receiver, of the application for such an order, it does not prescribe how such notice shall be given, and hence we must look to the law as it stood at the time of the passage of such act, in order to ascertain how such notice should be given. Sec. 408 of the Code provides that "notices shall be in writing, and notices and other papers may be served on the party or attorney in the manner prescribed in the next three sections, where not otherwise provided by this Code of Procedure." Sec. 409 provides that "The service may be personal, or by delivery to the party or attorney on whom the service is required to be made; or it may be as follows: * * * If upon a party, it may be made by leaving the paper at his residence, between the hours of 6 in the morning and 9 in the evening, with some person of suitable age and discretion." It will be observed that neither the act of 1897 nor any other statute, so far as we are informed, requires *personal* service of the notice of the motion for the appointment of a receiver, though the act of 1897, in the *proviso* to the second paragraph of the first section, does require, "that wherever a receiver is appointed, and the party claiming the property cannot be found within the State, *notice of such appointment* shall be forthwith given by publication or *personal* service without the State, as prescribed by law in the case of a summons in a civil action" (italics ours). This shows that the legislature, in passing that act, had in mind the difference between *personal* service and other modes of service recognized by law, and that, when their intention was to require *personal* service, they knew how to express such intention. We agree, therefore, with the Circuit Judge that the service of the notice of the motion for the appointment of a receiver upon

D. K. Cooley, who was not shown, or even alleged, to be absent from the State, but simply that he was evading the service of process, and who, probably, was near at hand, as he verified his answer before a magistrate of Abbeville County, where his residence was, by leaving copies of the papers with his wife at his place of residence in Lowndesville, Abbeville County, S. C., was a good service. But, in addition to this, we also agree with the Circuit Judge in holding that even if he was not served with notice, he waived such service by appearing, through his counsel, at the hearing of the motion, submitting his verified answer in the case, and otherwise resisting the motion. This Court has frequently held—one of the last cases being *Rosamond* v. *Earle*, 46 S. C., 9—that a defendant waives any objection to jurisdiction of his *person* by want of service of process, when he appears and answers, thereby waiving any such objection, and submitting himself to the jurisdiction of the Court.

The next question to be considered is, whether the Circuit Judge erred in holding that the plaintiff had the right to open and reply in argument. Rule LIX. is conclusive of this question. It provides as follows: "On all rules to show cause, where a party failing to answer would be in contempt, the party called on shall begin and end his cause; and on all motions or special matters, either springing out of a cause or otherwise, the actor or party submitting the same to the Court shall in like manner begin and close." This motion for the appointment of a receiver was not a rule "to show cause where the party failing to answer would be in contempt," but, on the contrary, it "is a motion in a cause," submitted by the plaintiff; and hence, under the express terms of the rule, the plaintiff was the actor, and entitled to open and reply.

The next question is, whether there was any error in striking out the affidavits submitted by defendants, tending to show that D. K. Cooley was in Kentucky at the time the note to Mrs. K. W. Allen purports to have been

given. Those affidavits were not pertinent to any issue presented by the motion for the appointment of a receiver. They related not only to an issue between Mrs. K. W. Allen and D. K. Cooley, but to an issue which had already been decided, and we are unable to see any relevancy to the issue in this case. There was no error, therefore, in striking out such affidavits.

The next inquiry is, whether the creditors of Allen & Cooley were necessary parties to this action. This question could not properly be raised except by demurrer or answer, as it is an objection for "*defect of parties;*" and as it was not so raised, the objection was waived. Code, sec. 169. But, in addition to this, we are not prepared to admit that such creditors are *necessary* parties to this action, although they may have been *proper* parties.

The main object of this action was to protect the plaintiff against being subjected to liability to the creditors of Allen & Cooley, by preserving the assets of Allen & Cooley, which had been left in the hands of D. K. Cooley for the very purpose of meeting such liabilities, from waste and misapplication. The issue, therefore, was between the plaintiff and D. K. Cooley and his brother, T. D. Cooley, who was charged with complicity in such waste and misapplication. The rights of the creditors were not *necessarily* involved; for, even if the assets of Allen & Cooley were entirely wasted, they would still have their claims not only on D. K. Cooley personally, but also on the plaintiff.

Our next inquiry is, whether the allegations contained in the complaint, if shown to be true, are sufficient to warrant the appointment of a receiver. We do not think that there can be any doubt that where two partners dissolve their partnership under an agreement whereby one of them assumes the payment of all the debts of the partnership and releases the other from any liability for the same, the relation between them becomes that of principal and surety, as between themselves, though they

both continue liable to the partnership creditors.  If there could be any doubt of so plain a proposition, so exactly in accordance with reason and justice, such doubt would be entirely dispelled by the authorities cited in the Circuit decree.  It is clear, therefore, that upon the dissolution of the partnership of Allen & Cooley, on the 30th of September, 1897, upon the terms set out in the complaint, and proved by the writing signed by D. K. Cooley, the relations between D. K. Cooley and the plaintiff became those of principal and surety, so far as the partnership debts were concerned.  This being so, what, then, are the rights of the plaintiff as surety?  There is no doubt that the surety might have brought an action against the principal debtor and the creditor to require the principal debtor to pay the debt, to the relief of the surety, as was done in the case of *Norton* v. *Reid*, 11 S. C., 593, and, if so, we see no reason why the surety may not, in a case like this, where the creditors are, probably, numerous, and the assets left in the hands of the principal debtor for the payment of the partnership debts consist largely of choses in action, which can be so easily dissipated, resort to the mode which has been adopted by the plaintiff to protect himself from liability to the partnership creditors.  This view is amply sustained by the authorities cited in the Circuit decree.  Indeed, this view may be sustained upon another ground.  The partnership assets were left in the hands of D. K. Cooley, with an obligation on his part to apply the same to the payment of the partnership debts, in relief of the plaintiff, and are, in fact, impressed with a trust for that purpose.  If so, then the plaintiff, unquestionably, would have a right in equity to take any suitable measures for the protection of that trust fund, and enforce its application to the purpose for which it was intended, so as to relieve himself from loss. It is said, however, that the complaint contains no allegation that the defendants, or either of them, are insolvent. In the first place, we do not regard such an allegation as necessary.  It certainly was not so regarded in the case of

*Norton* v. *Reid, supra,* a case analogous in principle to this—
for in that case the Circuit Chancellor said in his decree:
"From the evidence, there is no great danger of the com-
plainant's having to pay any portion of the single bill, but his
fears upon that subject cannot be regarded as groundless;"
and the only allegation in the bill as to this point was that
the principal debtor "was in affluent circumstances, but that
he (the surety) now fears that so much of his fortune was
swept away by the disastrous termination of the late war,
that he will not be able to pay his debts," but this allega-
tion was denied in the answer.   But, even if an allegation
of insolvency were necessary, we think it was sufficiently
made in the complaint.   It was alleged that executions ob-
tained on partnership debts against D. K. Cooley had been
returned "*nulla bona;*" and this has always been regarded
as one of the highest evidences of insolvency.   See *Akers*
v. *Rowan,* 33 S. C., 451; and as to the allegations in refer-
ence to the defendant, T. D. Cooley, they practically amount
to an allegation that he has no property subject to the pay-
ment of his debts.   It is also insisted that there should be
an allegation that some creditor of Allen & Cooley either
has attempted or is about to attempt to subject the plaintiff
to liability for the payment of the debt of Allen & Cooley;
but the cases of *Norton* v. *Reid, supra,* and *Hellams* v.
*Abercrombie,* 15 S. C., 110, show that such an allegation
was unnecessary.   We agree, therefore, with the Circuit
Judge that the allegations in the complaint, if proved, were
quite sufficient to warrant the appointment of a receiver.

The next inquiry is, whether these allegations were sus-
tained by the proof.   This presents a question of fact pure
and simple.   It would unnecessarily prolong this
opinion to enter into a discussion of the numerous
questions of fact presented by the exceptions, and
such discussion would prove of no value as a precedent.
We must, therefore, say that, after a careful consideration
of the numerous affidavits presented at the hearing, we
have been unable to discover any error in the conclusions

reached by the Circuit Judge upon all the material questions of fact, and we, therefore, concur in his conclusions.

The defendants set up, as a separate defense, the charge that plaintiff does not come into Court with "clean hands," referring to the fact which appears in some of the affidavits, that plaintiff has transferred some of his real estate to his wife. What this, if true, has to do with any issue presented in this case, we are at a loss to conceive; whether such a transfer is in fraud of the creditors of Allen & Cooley, is a question with which defendants have no concern. The defendant, D. K. Cooley, has assumed the payment of the debts of Allen & Cooley, and has been provided with funds sufficient for that purpose; and if he performs his duty, this question can never arise. At all events, as the Circuit Judge well says, it will be time enough to consider that question when some one of the creditors of Allen & Cooley sees fit to raise it—the defendants, certainly, are in no position to raise any such question.

The next question is, whether the Circuit Judge erred in correcting an inadvertent error into which he had fallen in his short order, fixing the value of the property and the consequent amount of the bond which the defendants would be entitled to give, under the provisions of the act of 1897, above referred to, in order that they might move to vacate the order appointing the receiver. It seems to us that the power of the Circuit Judge to correct such error is fully vindicated by the decision of this Court, in *Chafee* v. *Rainey*, 21 S. C., 11, and that the Circuit Judge, in his decree, has satisfactorily explained how he fell into this inadvertent error.

The only remaining inquiry is, whether there was any error in granting the order of 24th of March, 1898, based upon the verified petition of W. C. Tennant, as receiver. The error assigned in granting this order is lack of jurisdiction, based upon four grounds. 1st. Because the order was made without notice to the defendants' attorneys. 2d. Because notice of appeal to the Supreme Court having

been served from the order appointing a receiver, the Circuit Court no longer had the jurisdiction of the case. 3d. Because the notice of appeal operated as a stay of proceedings, and hence the Circuit Judge had no jurisdiction to grant the order. 4th. "Because no notice of the appointment of a receiver having been served on the said D. K. Cooley, in accordance with the provisions of the act of 1897, regulating the appointment of receivers, his Honor was without jurisdiction to pass said order."

It will be observed that the application of the receiver was simply for instructions as to his duty in the premises under the state of facts presented in his petition. It was not a motion to take property from the possession of one party and deliver it to another. The defendants had already been ordered by the Judge to deliver all of the property and assets of the partnership of Allen & Cooley to the receiver, to be by him administered under the directions of the Court. This was done by the order of 11th of March, 1898, made upon the hearing when all parties were before the Court, represented by counsel. Nor was it an application for leave to expend any of the funds in his hand as receiver, as in the case of the *State* v. *Port Royal and Augusta R. R. Co.*, 45 S. C., 464, where it was held that notice of an application to make such expenditure was necessary. But it was simply an application to the Court for instructions how to proceed under the circumstances stated in the petition, in the performance of his duties. The receiver is an officer or agent of the Court— the hand of the Court, as it is expressed in some of the cases— and when the Court takes possession of property and places it in the hands of a receiver, to be administered under its direction, and when an application is made to the Court for its instructions under a given state of circumstances, we see no necessity for notice of the application, and we know of no statute which requires notice of such an application.

The second ground upon which jurisdiction is denied is, that after notice of appeal from the order appointing a re-

ceiver, the Circuit Court no longer has jurisdiction of the case. In the first place, there is nothing in the "Case" to show that any such notice of appeal had been given before the application for the order in question was made. But even if such notice had then been given, that would not oust the jurisdiction of the Circuit Court, for the jurisdiction of the Supreme Court does not attach until the return is filed; and there is no pretense that the return had then been filed.

The third ground upon which it is claimed that the Circuit Judge had no jurisdiction to grant the order under consideration is, that the notice of appeal operated as a stay of proceedings. Besides the fact above adverted to, that it does not appear from the "Case" that any notice of appeal had been given when the order of 24th of March, 1898, was applied for, it is quite clear from the statute, as well as from the decision of this Court in the case of *Harmon* v. *Wagener*, 33 S. C., 487, that a mere notice of appeal in a case like this, where the order appealed from directs "the assignment or delivery of documents or personal property, the execution of the judgment shall not be stayed by appeal, unless the things required to be assigned or delivered.be brought into Court, or placed in the custody of such officer or receiver as the Court shall appoint, or unless an undertaking be entered into on the part of the appellant, by at least two sureties, and in such amount as the Court, or a Judge thereof, shall direct, to the effect that the appellant will obey the order of the Supreme Court upon the appeal," Code, sec. 350; and there is no pretense that any of these provisions were complied with in this case.

The fourth ground upon which the objection to the jurisdiction is based, is because notice of the appointment of a receiver was never served upon D. K. Cooley, in accordance with the provisions of the act of 1897, above referred to. While that act does provide for notice *of the.application* for the appointment of a receiver, the only provision requiring

notice of *such appointment* is where "the party claim-
ing the property cannot be found in the State;" and
in this case it has not been shown that D. K. Cooley
cannot be found *in the State.* The return of the sheriff of
Abbeville County, at most, only shows that he could not be
found *in Abbeville County,* but there is no affidavit or other
evidence that he cannot be found *in the State.* On the
contrary, as we have said above, the circumstances tend to
show that he was in the State, and was merely concealing
himself to avoid the service of process, so as to avoid any
proceeding for contempt in disobeying the order appointing
the receiver. If this had been an application for a rule to
show cause why D. K. Cooley should not be attached for
contempt in failing or refusing to obey the order appoint-
ing the receiver, then, apart from any statute, we could see
the necessity for showing that the order appointing the re-
ceiver had been personally served upon him. But this is,
not the nature of the order under consideration, and we see
no necessity, in this case, for serving D. K. Cooley with
notice of the order appointing the receiver, especially when
that order was granted at a hearing where D. K. Cooley was
represented by able and experienced counsel, in a case to
which he had become a party by answering the complaint,
if in no other way.

The judgment of this Court is, that orders appealed from
be affirmed.